ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
AUG 24 2006
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KEITH DOHSE, | ) | CASE NO. 06-508C |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | (Judge Lynn J. Bush) |

**PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Keith Dohse, for his Amended Complaint against Defendant, The United States, states and avers:

I.

JURISDICTION OF THE COURT

1. The United States Court of Federal Claims has jurisdiction over the parties and the subject matter of this Complaint pursuant to the Contract Disputes Act of 1978, 41 U.S.C., § 601-613; and the Tucker Act, 28 U.S.C., § 1346, etc., and 28 U.S.C., § 1491, etc., and pursuant to Rule 3.1 of the Rules of the United States Court of Federal Claims which governs amended and transferred complaints resulting from transfers from the Postal Service Board of Contract Appeals.

II.

PARTIES AND GENERAL ALLEGATIONS

2. Plaintiff, Keith Dohse ("Dohse"), is a United states Citizen who resides at HC 91 11D, Gordon, Sheridan County, Nebraska 69343.

3. The United States is named as the Defendant in this Complaint because an administrative agency of the United States, the United States Postal Service ("USPS"), had a contractual relationship with Dohse.

4. At all times relevant herein, Dohse was an individual, sole proprietor who had contracts with USPS to provide contractor owned and operated mail delivery as an independent contractor for USPS's highway contract route (HCR) 69384 and HCR 69362 in and around Gordon, Nebraska.

5. The contract for HCR 69384 began July 1, 2002, and the contract term ended on June 30, 2005. The contract provided that Dohse was to be paid at the rate of $1.09304 per mile for 27,629.3 annual miles, equaling a total contact rate of $30,199.93 per year. The annual rate was subsequently increased to $32,295.70.

6. Dohse applied for renewal of the contract for HCR 69384, and USPS refused to renew the contract for HCR 69384.

7. The contract for HCR 69362 began July 1, 2002, and the contract term was scheduled to end on June 30, 2006. The contract rate was increased to $34,622.35 per year, effective November 2, 2002, pursuant to Order No. 800-01905-03, and was subsequently increased to $36,132.90.

8. In addition to delivering the mail on his contracted routes, as the supplier of contract services to the USPS, paragraph B.1 of the contract document provides,

> b. The supplier (Dohse) will be required to report in sufficient time to case, load and depart on schedule.
>
> c. The supplier will be required to load, transport, and unload all classes of mail at the headout, en route, and destinating offices.
>
> d. The supplier will be required to exchange mail through locked lobbies, vestibules, collection boxes, or lockers as directed by the contracting officer or authorized representative. Collection boxes may not be cleared prior to the posted box collection time. Supplier will also be required to participate in the Collection Management System (CMS) (i.e. use of scanning devices, want, etc.) when instructed by the contracting officer or authorized representative.
>
> e. The supplier may be assigned lobby/vestibule keys or CMS wands, to be used in the delivery and collection of mail along the contract route. These are accountable items that must be signed out prior to the start of the designated trip(s) and turned in at the end of the trip(s). Loss, negligent damage, or failure to turn in accountable item(s) as scheduled may result in assessment of damages or termination of the contract.
>
> f. The supplier will be required to perform box delivery services to the customers and all other related services as outlined in section B.3, a General Requirements and Prohibitions – Docs

> Delivery, or as directed by the contracting officer or authorized representative.

9. As a supplier of contract services to the USPS, paragraph B.3.a of the contract provides:

> Sanctity of the Mail. The supplier shall carry all mail tendered for transportation under this contract, whatever may be its size and weight, with certainty, celerity, and security, in accordance with the operating schedule and between the points fixed in the schedule, as modified from time to time pursuant to this contract. The supplier, when so directed by the contracting officer, shall (i) load and unload mail, (ii) make the exchange of mail, and (iii) perform all minor administrative services as may be necessary to track and trace the mail. Passengers, freight and other traffic, if authorized by this contract, may be accommodated, but shall not delay the mail or reduce the contracted cubic capacity.

10. Dohse performed all contracted services and conditions required of him as an individual sole proprietor owner-operator pursuant to contracts HCR 69362 and HCR 69384 in a satisfactory manner and in compliance with the terms of the contracts. Dohse has been, and remains, ready, willing, and able to continue to perform all contractual services and conditions required by the contracts.

11. During the time he held the above-referenced contracts HCR 69362 and HCR 69384 with USPS, Dohse was regularly harassed by USPS employees, including, but not limited to, the former Gordon, Nebraska Postmaster, Don McQuitty.

12. Dohse believes his telephone line has been tapped illegally and without proper authorization by USPS officials and others in attempts to harass him, and to intentionally interfere with Dohse's relationship with the mail customers on his contract routes and to otherwise interfere with Dohse's performance of his contracts with the USPS.

13. On or about March 20, 2003, Leslie R. Carpenter, Manager, Transportation Contracts, Western Area Distribution Network of the USPS, sent a letter to Dohse informing him that he was under investigation by the Postal Inspection Service and the United States Postal Service Threat Assessment Team regarding alleged threats to postal personnel. Accordingly, effective March 20, 2003, Dohse was temporarily denied access to the mail and postal premises.

A true and exact copy of the March 20, 2003, letter is attached hereto as Exhibit 1, and incorporated by reference herein.

14. Dohse timely appealed the decision set forth in the March 20, 2003, letter referred to in the previous paragraph.

15. On or about May 9, 2003, Leslie R. Carpenter, sent another letter to Dohse, stating that the USPS was in receipt of the Investigative Memorandum from the Postal Inspection Service, which detailed their investigation and the outcome of their findings, and due to the information contained in the Investigative Memorandum, USPS made a final determination to permanently deny Dohse access to the mails and the postal premises. This denial applied to all highway contract routes, not just the routes he was previously driving. A true and exact copy of the May 9, 2003, letter is attached hereto as Exhibit 2, and incorporated by reference herein.

16. Dohse timely appealed the decision set forth in the May 9, 2003, letter referred to in the previous paragraph.

17. Following Dohse's appeal, on or about June 11, 2003, Russell A. Sykes, Manager, Surface Transportation CMC, sent notice to Dohse of his decision to deny Dohse's appeal and to agree with the contracting officer's conclusion that it would not be in the best interests of the USPS to allow Dohse access to the mail and the postal facilities. A true and exact copy of the June 11, 2003, letter is attached hereto as Exhibit 3, and incorporated by reference herein.

18. Dohse requested copies of investigative materials relating to the decision to deny him access to the mail and to the postal facilities, pursuant to the Freedom of Information Act. Eight (8) pages of record material were released to Dohse, and many deletions were made to those pages. There were one hundred forty-three (143) other pages which the USPS considered "exempt from disclosure" and would not release to Dohse. Dohse is seeking judicial review of that decision by bringing suit for that purpose in the U.S. District Court for the District of Nebraska.

19. Because Dohse was temporarily denied access to the mail and the postal facilities beginning on or about March 20, 2003, and was permanently denied access on or about June 11, 2003, Dohse hired and employed employees to work the contracted routes for him at an annual expense of approximately $20,000.00 to Dohse for the duration of the contracts.

20. On or about August 12, 2005, USPS notified Dohse that his right to perform service under HCR 69362 was terminated effective at the close of business on August 15, 2005. Dohse received the notice of termination in a letter sent by Bert Manchego, Manager, Transportation Contracts, USPS Western Area Distribution Networks Office, wherein he was notified that this was the final decision of the contracting officer.

21. In a letter dated August 24, 2005, Dohse notified Bert Manchego, Manager, Transportation Contracts, USPS Western Area Distribution Networks Office, of his intent to appeal termination of HCR 69362.

22. On or about September 13, 2005, USPS Board of Contract Appeals notified Dohse of Docketing and Complaint Due Date, and Dohse filed his Complaint with the USPS Board of Contract Appeals ("PSBCA") on or about October 14, 2005. His Complaint was assigned as PSBCA Case No. 5296 and entitled Appeal of Keith Dohse.

23. On February 2, 2006, this Court ordered that "[t]he Appeal of Keith Dohse, PSBCA No. 5296, shall be transferred to the United State Court of Federal Claims and assigned to [Judge Lynn J. Bush]." The transferred appeal from the PSBCA was filed in this Court on July 10, 2006, as Case No. 06-508C, and assigned to Judge Lynne J. Bush on July 24, 2006.

24. On June 9, 2004, Dohse filed his Complaint in this Court against the United States, docketed as CaseNo. 04-984C, in which he alleged the USPS breached its contracts with him (Dohse I).

25. The parties request this Court to consolidate Case No. 04-984C (Dohse I) with this Case No. 06-508C (Dohse II), and Plaintiff Dohse files this Amended Complaint which incorporates the allegations of Dohse I with the allegations in PSBCA No. 5296.

## III.

## BREACH OF CONTRACT

26. Dohse re-alleges paragraphs 1 through 25 above as if set forth verbatim herein.

27. Dohse performed all contracted services and conditions required of him as an individual sole proprietor owner-operator pursuant to contracts HCR 69362 and HCR 69384 in a satisfactory manner and in compliance with the terms of the contracts. Dohse remains ready, willing, and able to continue to perform all contractual services and conditions required of him.

28. Dohse was denied access by the USPS to the mail and to the postal facilities on or about March 20, 2003, and continued to be denied access thereto throughout the remainder of his contracts.

29. The USPS's decision to deny Dohse access to the mail and postal facilities was a unilateral decision by USPS. Dohse was not contacted or interviewed as part of the USPS's alleged investigation, and he was not given an opportunity to present evidence to rebut the allegations made against him.

30. As a direct and proximate result of the USPS's denial to Dohse of access to the mail and to the postal facilities, as set forth in the previous paragraphs, the USPS breached its contract with Dohse by denying him the ability to perform the services for which he contracted, as an individual sole proprietor owner-operator, including sorting and delivery of the mail.

31. As a further direct and proximate result of the USPS's denial to Dohse of access to the mail and to the postal facilities, Dohse was forced to hire employees to carry out his obligations under the terms of his contracts with USPS at an annual cost to Dohse of approximately $20,000.00 since March 20, 2003, a cost which continued as long as Dohse held the contracts.

32. The USPS further breached its contract with Dohse by failing to abide by the following requirements of the contracts:

a. The Postmaster, as the administrative official at the Gordon, Nebraska, post office, was to show and teach the routes to Dohse, but failed to do so, thereby causing Dohse to spend unauthorized mileage and time to learn the routes on his own;

b. By failing to pay the correct mileage of the routes;

c. By failing to give ten (10) tags after he and his employees were cleared to operate the contract;

d. By removing Dohse's employees from the contracted routes for no reason;

e. By refusing to allow Dohse and his employees into the post office in the early mornings as per the contracts;

f. By failing to allow Dohse and his employees into the post office on Saturday afternoons to complete the requirements of his mail route contracts; and

g. By preventing Dohse's new employees from working by issuing an emergency badge.

33. Beginning in April, 2005, Gordon, Nebraska, Postmaster Felton made unilateral changes to Dohse's contracts for HCR 69362 and HCR 69384. Felton decreased the sorting time by one-half (½) hour each day, and also forced Dohse to begin his day at a much later time than usual. Under the contract terms of HCR 69362, Dohse's route was to begin at 7:22 a.m., and under the terms of HCR 69384, Dohse's routes were to begin at 8:00 a.m. Following the unilateral changes made by Felton, Dohse was required to begin at 8:30 a.m. for both routes. While decreasing the sorting time, Felton still expected Dohse to complete his daily work in the same time frame as before, even though allowing one-half (½) hour less for work to be done.

34. Contracts for HCR 69362 and HCR 69384 provided that service changes other than minor service changes, including increases or decreases in compensation, may be made by mutual agreement of the contracting officer and the supplier. Such changes shall be memorialized by formal amendment to the contract. While Felton is the Post Master in Gordon, Nebraska, he is not the contracting officer, does not, and did not have, the contractual authority to make major service changes such as those he imposed. Only the contracting officer can make those major changes, and those major changes can only be made by mutual agreement of the contracting officer and Dohse as the supplier. Since Dohse did not agree to those contract changes, and the contract changes were not made by the contracting officer, the USPS violated its contract under both routes.

35. Beginning in mid-April, 2005, and continuing into the summer months of 2005, USPS issued numerous PS Forms 5500 to Dohse under HCR 69362, most of which were for Dohse's alleged failure to observe the new contract schedule imposed by Gordon, Nebraska, Post Master Felton.

36. On June 14, 2005, Bert Manchego, Manager, Transportation Contracts, USPS Western Area Distribution Networks Office, issued a warning letter for unsatisfactory service on HCR 69362 to Dohse. The letter stated that Dohse was mandated to take whatever action was

necessary to restore and maintain satisfactory service within seven (7) days of receipt of the letter. In particular, he was ordered to correct deficiencies of which he had been advised by issuance of PS Forms 5500. Dohse was told to desist in delaying the mail, that unwarranted expansion of office and/or delivery time is not acceptable, and that the realistic amount of time needed for these duties remained essentially unchanged since the award. In addition, he was also to correct deficiencies by using a yellow light at all times when delivering and by following all instructions of the administrative officials.

37. Prior to the issuance of the letter, and thereafter, Dohse took all actions necessary to restore and maintain satisfactory service, and corrected the alleged deficiencies of which he had been advised by issuance of the PS Forms 5500, including all alleged deficiencies identified in the June 14, 2005, letter.

38. Dohse made a renewal offer for HCR 69384 to be effective July 1, 2005. That offer was received and accepted on May 4, 2005, subject to final review by the contracting officer. That offer was also consistent with an April 12, 2005, letter from Bertrum T. Manchego, Manager, Transportation Contracts, USPS, wherein Manchego wrote, "I am willing to renew at an annual rate of $34,200.00." Thereafter, on June 20, 2005, Manchego sent notice on behalf of USPS that effective close of business June 30, 2005, Dohse's HCR Contract 69384 would be allowed to expire, and that Manchego had made the decision not to renew the contract. The reasons given by Manchego in the June 20, 2005, letter were that Dohse had not been readily accessible for purposes of communication, that he claimed some official mail addressed to him only after significant delay, that Dohse's management of contracts with USPS was unsatisfactory, specifically, because one of the highway contract routes he held (69362) was in an advanced stage of the corrective action process, and because he was permanently denied access to the mail and postal premises on May 9, 2003, based on an investigative memorandum from the Postal Inspection Service.

39. In the winter and spring of 2005, USPS offered Dohse the opportunity to bid on HCR 69364, with the contract to begin on July 1, 2005. He was notified that he had submitted the lowest offer, and was proceeding with negotiations on the final terms of said contract. Yet, on June 20, 2005, his offer was rejected and he was not awarded the contract for HCR 69364,

allegedly because of USPS's dissatisfaction with his performance on HCR routes 69384 and 69362. Dohse appealed that decision to the USPS Ombudsman.

40. On August 12, 2005, Dohse received PS Form 7440, Contract Route Service Order, from USPS, terminating his right to perform service under HCR 69362, effective close of business August 15, 2005. The reasons given by USPS for the termination were that Dohse failed to observe the contract schedule, failed to perform scanning duties accurately, and failed to communicate effectively with the administrative official. USPS also alleged that Dohse had suffered nine (9) deficiencies on six (6) separate service days since June 14, 2005. Each of those deficiencies were related to changes in contract schedule unilaterally made by USPS for HCR 69362.

41. The cancellation by USPS of Dohse's contract for HCR 69362 on August 12, 2005, was a breach of contract by USPS. USPS' actions and breach were made in retaliation for Dohse's opposition to the unilateral changes made to his contract by Gordon, Nebraska, Post Master Felton, in direct retaliation for Dohse's filing of complaints against USPS as referenced above in the United States Court of Federal Claims and in the United States District Court for the District of Nebraska, and in reliance upon the PS Forms 5500 which USPS issued to Dohse without good cause for Dohse's alleged failure to abide by the changes made to contract schedules by Gordon, Nebraska Post Master Felton in violation of Dohse's contract with USPS.

IV.

DAMAGES

42. Dohse re-alleges paragraphs 1 through 41 above as if set forth verbatim herein.

43. As a direct result of USPS's breaches of its contracts with Dohse as set forth above, Dohse has been denied the opportunity to perform the contracted services as an individual sole proprietor owner-operator, and was forced to hire employees to carry out his obligations under the terms of his contracts with USPS at an annual cost to Dohse of approximately $20,000.00 from March 20, 2003, through August 12, 2005, at which time his contracts were cancelled.

44. As a further direct result of the USPS's breaches of its contracts with Dohse as set forth above, Dohse incurred additional costs for mileage for which he should be reimbursed, and his employees were denied ID tags, were prevented from working the hours which the contract

allows them to work, and were otherwise interfered with, thereby causing economic harm to Dohse in an amount to be determined.

45. As a direct result of USPS' breaches of its contracts with Dohse and USPS' reliance upon the PS Forms 5500 which USPS issued to Dohse without good cause as set forth above, Dohse has been denied the opportunity to perform services for which he contracted with the USPS under HCR 69362, has been denied the opportunity to renew his contract No. HCR 69384 for a period of four (4) years, and has been denied the opportunity to perform contractual services for USPS under HCR 69364, a contract for which he was the low bidder.

46. As a direct result of USPS' breaches of its contracts with Dohse and USPS' reliance upon the PS Forms 5500 which USPS issued to Dohse without good cause as set forth above, Dohse has suffered monetary damages as follows:

a. For termination of Dohse's right to perform his contracted services under HCR 69362 from August 16, 2005, through the scheduled contract termination date of June 30, 2006, in the amount of $31,616.29.

b. For USPS' non-renewal of HCR 69384 in an amount of $136,000.00 (four-year contract at $34,000.00 per year minimum).

c. USPS' failure to award Dohse the contract under HCR 69364 in the amount of $117,200.00 ($29,300.00 per year for four (4) years).

47. As a further and direct result of USPS' breaches of its contracts with Dohse as set forth above, Dohse has incurred, and will continue to incur attorney fees and costs.

48. The USPS's decision to deny access to the mail and to the postal facilities should be overruled, and Dohse should be allowed to continue fulfilling the services required by his contracts as an individual sole proprietor owner-operator.

49. USPS' decision to terminate Dohse's contract under HCR 69362, to not renew Dohse's contract under HCR 69384, and decision to not award the contract to Dohse under HCR 69364 should be overruled, and Dohse should be allowed to perform contractual services for each of the aforesaid contracts.

V.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Keith Dohse, respectfully requests the Court to order the Defendant, United States, to pay him at least $48,333.00 as damages for extra salaries which he paid to employees from March 20, 2003, through August 12, 2005; to pay him at least $31,616.29 for damages he has suffered as a result of USPS' termination of Dohse's contract HCR 69362; to pay him $136,000.00 for USPS' failure to renew Dohse's contract under HCR 69384; to pay him $117,200.00 for USPS' failure to award Dohse a contract under HCR 69364; to pay Dohse's attorney fees and costs which he has incurred and will incur in this matter; to overrule the decision of the USPS terminating Dohse's right to perform the contract under HCR 69362; to overrule USPS' decision not to renew Dohse's contract under HCR 69384; to overrule USPS' decision not to award Dohse the contract under HCR 69364; to allow Dohse to perform the contracts for the above-referenced HCR's; and for such other and further relief as this Court deems just and equitable; taxing all costs to Defendant, United States. Plaintiff also respectfully requests this Court to consolidate this Case No. 06-508C with Case No. 04-984C.

Dated this 23rd day of August, 2006.

Respectfully submitted,

KEITH DOHSE, Plaintiff,

By: [signature]

Howard N. Epstein, #21173
MARKS CLARE & RICHARDS, L.L.C.
11605 Miracle Hills Drive, Suite 300
P.O. Box 542005
Omaha, NE 68154-8005
(402) 492-9800
(402) 492-9336 (Fax)
hepstein@mcrlawyers.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing was mailed by regular United States mail, postage prepaid, this 23rd day of August, 2006, to the following:

STEPHEN D. LOBAUGH
CIVIL PRACTICE SECTION - LAW DEPARTMENT
UNITED STATES POSTAL SERVICE
475 L'ENFANT PLAZA, S.W.
ROOM 6333
WASHINGTON, D.C. 20260-1127

JAMES W. POIRIER
COMMERCIAL LITIGATION BRANCH
CIVIL DIVISION - DEPARTMENT OF JUSTICE
ATTENTION: CLASSIFICATION UNIT
8TH FLOOR, 1100 L STREET, N.W.
WASHINGTON, DC 20530

Howard N. Epstein

Y:\WDOX\CLIENTS\16138\000\plea\EA4259.DOC

LESLIE R. CARPENTER, MANAGER, TRANSPORTATION CONTRACTS
WESTERN AREA DISTRIBUTION NETWORKS
UNITED STATES POSTAL SERVICE

March 20, 2003

CERTIFIED MAIL
RESTRICTED DELIVERY
7001 1140 0001 5994 8682

HCR's 69362 and 69384
Keith L. Dohse
HC 91 Box 11D
Gordon NE 69343-9208

Dear Mr. Dohse:

Our office has been informed that you are currently under investigation by the Postal Inspection Service and the US Postal Service Threat Assessment Team regarding alleged threats to postal personnel. Accordingly, effective today, you are temporarily denied access to the mail and postal premises. This temporary denial will be in effect until such time as there has been a final determination as to this matter. Final determination will be made upon receipt and review by this office of the Investigative Memorandum provided by the Postal Inspection Service upon completion of their investigation and/or final communication from the Threat Assessment Team.

Upon notification, you are hereby temporarily denied access to the mails and postal premises (aside from normal customer transactions to conduct business). Furthermore, this temporary denial applies to all Highway Contract Routes, and not just the route(s) you were previously driving. Please relinquish your ID badge and all Postal Service keys to your Administrative Official immediately.

You may appeal this decision within five (5) days of receipt of this letter. Your appeal letter should be mailed to the Manager, Transportation Contracts, Western Area DNO 1745 Stout Street, Suite 500, Denver, CO 80299-6200. PLEASE RETURN THIS LETTER WITH YOUR CORRESPONDENCE. Should you have any questions, you may call (303) 313-5149 or fax (303) 313-5190.

Sincerely,

Leslie R. Carpenter
Manager, Transportation Contracts

Distr: Administrative Official
Contract Transportation Specialist
Postal Inspection Service

EXHIBIT 1

1745 STOUT STREET SUITE 500
DENVER CO 80299-6200
(303) 313-5149
FAX: (303) 313-5190

LESLIE R. CARPENTER, MANAGER, TRANSPORTATION CONTRACTS
WESTERN AREA DISTRIBUTION NETWORKS

UNITED STATES POSTAL SERVICE

DATE: May 9, 2003

CERTIFIED MAIL
RESTRICTED DELIVERY
7000 0520 0023 3271 4011

HCR #69362 and HCR 69384
Keith L. Dohse
HC 91 BOX 11D
Gordon, NE 69343-9208

REGARDING: DENIAL OF ACCESS TO MAIL AND POSTAL PREMISES

Dear Mr. Dohse;

On March 20, 2003, you were "temporarily" denied access to the mail and postal premises due to a pending investigation by the Postal Inspection Service and the US Postal Service Threat Assessment Team. At this time, we are in receipt of the Investigative Memorandum from the Postal Inspection Service, which details their investigation and the outcome of their findings. Due to the information contained in the Investigative Memorandum, we have made the final determination to permanently deny you access to the mail and postal premises.

***You are hereby denied access to the mails and postal premises (aside from normal customer transactions to conduct business).*** **Furthermore, this denial applies to *all* Highway Contract Routes, not just the routes you were previously driving.** If you have not already done so, please relinquish your ID badge to your Administrative Official immediately.

You may appeal this decision within five (5) days of receipt of this letter. Your appeal letter should be mailed to the Manager, Transportation Contracts, Western Area DNO, 1745 Stout Street, Suite 500, Denver, CO, 80299-6200. **PLEASE RETURN THIS LETTER WITH YOUR CORRESPONDENCE.** Should you have any questions, you may call (303) 313-5149 or fax (303) 313-5190.

Sincerely,

Leslie R. Carpenter
Manager, Transportation Contracts

Distr: Administrative Official
Contract Transportation Specialist
Postal Inspection Service

LRC:mbz

1745 STOUT STREET SUITE 500
DENVER, CO 80299-6200
(303) 313-5149

EXHIBIT 2

FILE

SUPPLY MANAGEMENT

UNITED STATES
POSTAL SERVICE

June 11, 2003

Mr. Keith L. Dohse
HC 91 Box 11D
Gordon, NE 69343-9208

Dear Mr. Dohse:

Your appeal of the decision by the Contracting Officer to you access to the mail has been forwarded to this office for adjudication.

From the record, the Contracting Officer denied you because of an incident regarding alleged threats of violence towards Postal employees at the Gordon, NE Post Office. The Postal Service has a zero tolerance policy against violence in the workplace. This means that we will not ignore any incident of verbal or physical action that could cause injury to another. I agree with the Contracting Officer's conclusion that it would not be in the best interest of the U.S. Postal Service to allow you access to the mail and postal facilities

In adjudicating denial of appeals, I look at the record to determine if there is evidence that the decision by the Contracting Officer was capricious, arbitrary, or in violation of postal regulations. In this case there is no such evidence, therefore your appeal is denied.

Sincerely,

Russell A. Sykes
Manager, Surface Transportation CMC

cc: Les Carpenter
Manager, Transportation Contracts
Western Area DNO

475 L'Enfant Plaza SW Room 4900
Washington, DC 20260-6210
202-268-3029
Fax: 202-268-4313

EXHIBIT 3